IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| IVY GROSHONG-GALLIHER, ET AL., | § § § | |
| Plaintiffs, | § § | |
| v. | § § | Case No: 4:24-CV-01169-O |
| BELL TEXTRON, INC., THE BOEING COMPANY, and UNIVERSAL STAINLESS & ALLOY PRODUCTS, INC., | § § § § § | |
| Defendants. | § | |

## JOINT REPORT REGARDING CONTENTS OF SCHEDULING ORDER

Plaintiffs Ivy Groshong-Galliher, Individually and as Representative of the Estate of Jacob Galliher, and as Next Friend of Malcom Groshong-Galliher and Killian Groshong-Galliher (collectively, "Plaintiffs") and defendants Bell Textron, Inc. ("Bell"), The Boeing Company ("Boeing"), and Universal Stainless & Alloy Products, Inc. ("Universal Stainless") (collectively, "Defendants," and together with Plaintiffs, the "Parties") file this Joint Status Report pursuant to this Court's March 14, 2025 Order (Dkt. No. 21) and Federal Rule of Civil Procedure 26(f).

Counsel for the Parties conducted a scheduling conference via videoconference on March 28, 2025. On behalf of Plaintiffs, Theodore C. Schultz attended. On behalf of Bell, Lars L. Berg, William V. O'Connor, and Rachael M. Heller attended. On behalf of Boeing, Timothy D. Howell and Todd W. Rosencrans attended. On behalf of Universal Stainless, Walter McInnis and Evan Kwarta attended. Prior to and during the scheduling conference, the Parties discussed possible settlement. The case did not settle during the conference, but the Parties will continue to explore the possibility of settlement at the appropriate time.

# JOINT REPORT

1. **A brief statement of the claims and defenses:**

   a. **Plaintiffs' Statement:**

       i. This action concerns the wrongful death of Staff Sgt. Jacob Galliher in the crash of a Bell-Boeing V-22 Osprey on November 29, 2023. A partnership between Bell and Boeing manufactured the V-22 Osprey, using a metal alloy known as X-53 in the high speed pinions of the aircraft's gearbox. The X-53 alloy was manufactured by Universal Stainless. Since at least 2014, Boeing and Bell have known that Universal Stainless has had difficulty producing X-53 with sufficient purity and difficulties producing X-53 with the proper amount of carbon, often resulting the alloy becoming overly brittle and subject to failure. Other manufacturers of X-53 use a more modern purification process that results in a more stable alloy.

       ii. In 2014, Bell and Boeing provided the U.S. government with a risk report regarding the X-53 manufactured by Universal Stainless, and the government initiated contractual financial withholds until the alloy was produced with greater purity. Despite these contractual withholds, Bell and Boeing continued to use the X-53 produced by Universal in the V-22 Osprey. Bell and Boeing then produced a safety analysis for the U.S government, admitting that if the gearbox failed due to X-53 alloy purity problems, it could lead to a catastrophic air crash. They argued, however, that such a crash was unlikely, multiplying the probability of gear failure (estimated from historical data) by the volume of X-53 used, and then

      lowering the percentage chance of a crash by multiplying by an ad hoc adjustment that the crash only would occur 50% of the time. As a result, Bell and Boeing artificially lowered the estimated chance of a crash, and thereby avoided having their risk report sent to all branches of the U.S. military for review. In subsequent years, Bell and Boeing further kept the risk assessment for a crash with the Osprey low, by producing reports falsely estimating that Navy Ospreys would operate over water 40% of the time and Air Force Ospreys would operate over water only 10% of the time.

iii. As a result of these artificially low risk assessments, pilots of the Osprey were given guidance that they should told that if detectors in the Osprey indicated the detection of metal chips that could not be burned off, the pilot should land as soon as possible, with factors such as sea state, weather, communication, survival equipment, and the location of other aircraft, ships, and land to be taken into consideration. The Osprey was also manufactured with to produce a Chip Detector Fail alert, by which pilots were told indicates that the chip detector system itself has failed. Pilots were warned, however, that the Chip Detector Light could also flash on if there were too many chips detected.

iv. In this case GUNDAM 22 had the pinion in its gearbox shred because of an alloy failure. When the chip detector indicated an alert, the pilot scrapped the mission and flew towards Yakushima Airport in Japan. As the pilot approached the airport, the Chip Detector Fail light came on, indicating to the pilot that the chip detector system had failed and that the alerts he had

received previously were faulty. In fact, however, the Chip Detector Fail had turned on because the chip detector detected so many chips that it was overwhelmed. The pilot, thinking his aircraft was safe, turned to make a standard approach to the runway, but as he turned, the gearbox failed, and his plane flipped over and he crashed less than 1,000 meters from the shore of the island. The use of the flawed alloy, combined with the improper risk assessment from Bell and Boeing and the failure of Bell and Boeing to advise that the Chip Detector Fail alert could go off when too many chips were detected caused the pilot to receive bad information and ultimately caused the V-22 to crash, killing Staff Sgt. Jacob Galliher.

b. **Defendants' Statement:**

    i. This product liability action arises out of a November 29, 2023, crash of a Bell-Boeing CV-22 Osprey military aircraft (the "Subject Aircraft") during training exercises off the coast of Japan, which resulted in fatal injuries to all eight servicemembers on board, one of whom was Jacob Galliher. Plaintiffs, as representatives of the estate of Jacob Galliher and in various other purported capacities, assert various negligence and product liability claims against Bell, Boeing, and Universal Stainless. However, Plaintiffs cannot sustain any of their prima facie claims against Defendants. Plaintiffs' allegations will be proven false. Defendants also contend they will prove that the Subject Aircraft conformed to design specifications approved by the United States and was consistent with the state of the art at

    the time of its design, manufacture, and sale, such that it was reasonably safe and not defective.

ii. Defendants also assert several affirmative defenses. Principally, each purported cause of action is barred, in whole or in part, by the government contractor defense. This defense protects government contractors from tort liability "when (1) the United States approved reasonably precise specifications; (2) the equipment conformed to those specifications; and (3) the supplier warned the United States about the dangers in the use of the equipment that were known to the supplier but not to the United States." *Williams v. Lockheed Martin Corp.*, 990 F.3d 852, 860 (5th Cir. 2021) (quoting *Boyle v. United Techs. Corp.*, 487 U.S. 500, 512 (1988)). Here, the Subject Aircraft was designed and manufactured in conformity with specifications provided or approved by the United States government (specifically, the Naval Air Systems Command "NAVAIR"), and the government was aware of any dangers in the use of the aircraft known to the suppliers. Plaintiffs' characterization of the risk assessment provided to the NAVAIR in 2014 and NAVAIR's response to it is inaccurate and incorrect. Plaintiffs' claims are therefore barred.

iii. Moreover, Plaintiffs' claims are preempted and exclusively governed by the Death on the High Seas Act (DOHSA), 46 U.S.C. § 30302, *et seq.* DOHSA applies to all wrongful death claims where the incident took place on the "high seas" more than three nautical miles from the U.S. shore, as is the case here. 46 U.S.C. § 30302. Under DOHSA, all of Plaintiffs' claims for

non-pecuniary damages, and all claims brought by any Plaintiff who is not the personal representative of the decedent, are subject to dismissal. *See Horsley v. Bell Textron, Inc.*, 2021 WL 8999000, at *4 (N.D. Tx. July 20, 2021). Defendants thus anticipate filing a motion for judgment on the pleadings based on DOHSA in the early stages of this lawsuit.

2. **A proposed time limit to file motions for leave to join other parties:** Plaintiffs' deadline to join/add parties: June 5, 2026.  Defendants' deadline to join/add parties: July 2, 2026.

3. **A proposed time limit to amend pleadings:** Plaintiffs' deadline to amend pleadings: June 5, 2026.  Defendants' deadline to amend pleadings: July 2, 2026.

4. **Proposed time limits to file various types of motions, including dispositive motions (NOTE: The dispositive motion deadline cannot be less than 90 days before trial; the Court prefers 120 days):**

    a. Although the Parties do not propose formal phased discovery at this time, they believe that resolution of this case will be facilitated by permitting two sets of dispositive motions, particularly given the threshold nature of the government contractor defense.  Dispositive motions concerning the government contractor defense shall be filed by June 26, 2026.  All dispositive motions concerning issues other than government contractor defenses shall be filed by October 13, 2026.

    b. Motions in limine shall be filed by December 11, 2026.  Any opposition memorandum to a motion in limine shall be filed by December 18, 2026.

5. **A proposed time limit for initial designation of experts:** Plaintiffs' deadline to designate experts: July 24, 2026.

6. **A proposed time limit for responsive designation of experts:** Defendants' deadline to designate experts: August 28, 2026.

7. **A proposed time limit for objections to experts (i.e., Daubert and similar motions):** The Parties' deadline for objections to experts: October 13, 2026.

8. **A proposed plan and schedule for discovery, a statement of the subjects on which discovery may be needed, a time limit to complete factual discovery and expert discovery, and a statement of whether discovery should be conducted in phases or limited to or focused upon particular issues:**

   a. At this time, the Parties anticipate discovery will be needed on the following subjects: the manufacturing, design, and assembly of the Subject Aircraft; any agreements between Defendants and the U.S. Government, including relevant specifications, concerning the Subject Aircraft; documents and communications relevant to the government contractor defense; the operations, service and maintenance history of the subject aircraft; the alleged incident providing the basis for this lawsuit; the scope of Plaintiff's alleged economic damages; and other issues as may arise during the course of discovery.

   b. The Parties anticipate serving written discovery and taking oral depositions.

   c. The Parties do not anticipate requiring a formal phased discovery approach. The Parties will, however, conduct their discovery to address issues relevant to the government contractor defense early in the discovery process.

   d. The Parties anticipate that it will take roughly seventeen months to complete factual discovery and expert discovery, which assumes and is contingent upon reasonably prompt engagement and cooperation in the discovery process by the U.S.

Government. A longer than usual discovery timeline is necessary because of the unique requirements under the Defense Federal Acquisition Regulation Supplement ("DFARS"). Specifically, DFARS 252.204.700 "Disclosure of Information" provides that the "Contracting Officer" must give written approval before a Contractor may release information outside of the Contractor's organization. Here, the Contracting Officer is the Naval Air Systems Command ("NAVAIR") and the Contractors are Bell and Boeing. Before Bell and Boeing will be able to produce documents in this litigation, NAVAIR will be required to both review and approve of all document productions. In addition, the Parties anticipate submitting a joint request to NAVAIR and the United States Air Force for production of documents and access to the aircraft wreckage in accordance with Department of Defense Instruction 5405.02, *Release of Official Information in Litigation and Presentation of Witness Testimony by DoD Personnel (Touhy Regulation).* In Defendants' experience, it is not uncommon for discovery activities involving the U.S. Government to take a year or more to complete. In the event that there are significant delays in production of discovery materials by NAVAIR or the Air Force, or delays in NAVAIR's approval of the proposed document production by the Defendants, the Parties respectfully submit that this schedule may require adjustment by the Court. Subject to these caveats:

   i. All fact discovery shall be completed by September 18, 2026.

   ii. The deadline to depose experts shall be September 18, 2026.

9. **What changes should be made in the limitations on discovery imposed under these rules or by local rule, and what other limitations should be imposed:** The Parties

believe that the limitations on discovery imposed by the Federal Rules of Civil Procedure are adequate at this time, and that discovery may commence upon the Parties' service of initial disclosures.

10. **Proposed means for disclosure or discovery of electronically stored information ("ESI") and a statement of any disputes regarding the disclosure or discovery of ESI:** The Parties do not currently foresee any dispute regarding the disclosure of ESI but agree to revisit the issue should disagreements arise. The Parties are currently negotiating an ESI Protocol and anticipate finalizing that Protocol by May 16, 2025, the date of the Parties' initial disclosures.

11. **Any proposals regarding the handling and protection of privileged or trial-preparation material that should be reflected in a Court Order:** The Parties are currently negotiating an Agreed Protective Order that will govern the handling of confidential and privileged information. The Parties anticipate submitting that for the Court's approval by May 16, 2025. Otherwise, the Parties will adhere to the applicable rules governing privileged materials.

12. **A proposed trial date, estimated number of days required for trial and whether a jury has been demanded (NOTE: Generally, the proposed trial date should be approximately one year after the date the initial complaint was filed):**

    a. Proposed Trial Date: The Parties propose a trial date of January 11, 2027, subject to the Court's availability.[1]

    b. Estimated Days for Trial: The Parties believe the dispute can be tried in ten days.

---

[1] The Parties propose a pretrial statement deadline November 20, 2026. The Parties propose a Pretrial conference of November 30, 2026, subject to the Court's availability.

    c. Jury Demand: Plaintiffs have requested a jury trial. Defendants' position is that Plaintiffs have no right to a jury trial because DOHSA preempts and exclusively governs Plaintiffs' claims and requires a bench trial. *See Horsley*, 2021 WL 8999000, at *9.

13. **A proposed date for further settlement negotiations:** The Parties' deadline to hold a settlement conference: October 27, 2026, but anticipate that earlier discussions may take place.

14. **Objections to Fed. R. Civ. P. 26(a)(1) asserted at the Scheduling Conference, and other proposed modifications to the timing, form or requirement for disclosures under Rule 26(a), including a statement as to when disclosures under Rule 26(a)(1) were made or will be made:** The Parties' initial disclosures shall be due on May 16, 2025. The Parties do not currently anticipate any modifications to the form of the disclosures under Rule 26(a).

15. **Whether the parties will consent to trial (jury or non-jury) before a U.S. Magistrate Judge (if all parties consent, please submit the attached consent form):** The Parties do not consent to a trial before a U.S. Magistrate Judge at this time.

16. **Whether the parties are considering mediation or arbitration to resolve this litigation and a statement of when it would be most effective (e.g., before discovery, after limited discovery, after motions are filed, etc.), and if mediation is proposed, the name of any mediator the parties jointly recommend to mediate the case:** The Parties have discussed mediation and have decided to mediate by October 27, 2026, which is after dispositive motions are filed and fact discovery closes. The Parties have agreed to use JAMS as the

mediation provider, with the specific mediator to be determined based on availability closer to the date of the mediation.

**17. Any other proposals regarding scheduling and discovery that the parties believe will facilitate expeditious and orderly preparation for trial:** None at this time.

**18. Whether a conference with the Court is desired:** The Parties do not believe a conference with the Court is necessary at this time.

**19. Any other matters relevant to the status and disposition of this case, including any other Orders that should be entered by the Court under R. 16(b), and (c) and 26(c):** None at this time.

Dated: April 11, 2025            Respectfully submitted,

*/s/ Lars L. Berg*
Lars L. Berg, State Bar No. 00787072
**KELLY HART & HALLMAN LLP**
201 Main Street, Suite 2500
Fort Worth, Texas 76102
Telephone: 817.332.2500
Facsimile: 817.878.9280
lars.berg@kellyhart.com

*/s/ William V. O'Connor*
William V. O'Connor
(*Admitted Pro Hac Vice*)
**COOLEY LLP**
10265 Science Center Drive
San Diego, California 92121
Telephone: +1 858-550-6000
Facsimile: +1 858-550-6420
woconnor@cooley.com

*Attorneys for Defendant Bell Textron, Inc.*

*/s/ Timothy D. Howell*
Timothy D. Howell, State Bar No. 24002315
Shayne D. Moses, State Bar No. 14578980
David A. Palmer, State Bar No. 00794416
**MOSES, PALMER & HOWELL, L.L.P.**
The Fort Worth Club Building
306 West 7th Street, Suite 504
Fort Worth, Texas 76102
Telephone: 817.255.9100
Facsimile: 817.255.9199
thowell@mph-law.com
smoses@mph-law.com
dpalmer@mph-law.com

*/s/ Todd W. Rosencrans*
Todd W. Rosencrans (*pro hac vice* admission)
Laura C. Hill (*pro hac vice* admission)
Kellin R. Tompkins (Texas State Bar No. 24131717)
**PERKINS COIE LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Telephone: 206.359.8000
TRosencrans@perkinscoie.com
LHill@perkinscoie.com
KTompkins@perkinscoie.com

*Attorneys for Defendant The Boeing Company*


*/s/ Michael G. McQuillen*
Michael G. McQuillen (*pro hac vice* forthcoming)
**HINSHAW & CULBERTSON LLP**
151 N. Franklin St., Suite 2500
Chicago, Illinois 60606
Telephone: 312.704.3000
Facsimile: 312.704.3001
mmcquillen@hinshawlaw.com

*and*

Evan M. Kwarta, N.D. Tex. No. 4401543NY
**HINSHAW & CULBERTSON LLP**
800 Third Avenue, Thirteenth Floor
New York, New York 10022
Telephone: 212.655.3839
ekwarta@hinshawlaw.com

*and*

Walter McInnis, State Bar No. 24046394
**HINSHAW & CULBERTSON LLP**
1717 Main Street, Suite 3625,
Dallas, Texas 75201
Telephone: 945.229.6390
Facsimile: 312.704.3001
wmcinnis@hinshawlaw.com

*Attorneys for Defendant Universal Stainless & Alloy Products, Inc.*

By: /s/ Theodore Schultz
Theodore C. Schultz
State Bar No. 00797393
**LINDOW ▪ STEPHENS ▪ SCHULTZ LLP**
One Riverwalk Place
700 N. St. Mary's Street
Suite 1700
San Antonio, Texas 78205
Telephone: 210.227.2200
Facsimile: 210.227.4602
Email: tschultz@lsslaw.com

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

    I certify that a true and correct copy of the foregoing document was served upon all counsel of record via the Court's electronic filing system on the 11th day of April, 2025.

                                           /s/ *Lars L. Berg*
                                           Lars L. Berg